# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| MARGRET BRACE, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br> vs.<br><br>PATENAUDE & FELIX, A.P.C.,<br><br>    Defendant. | Case No.: 17-cv-120<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA").

## JURISDICTION

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Margret Brace is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family or household purposes.

5. Defendant Patenaude & Felix, A.P.C. ("Patenaude") is a law firm with its principal offices located at 4545 Murphy Canyon Road, 3rd Fl., San Diego, California 92123.

6. Patenaude is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others. Patenaude's website indicates that

Patenaude also collects debts through litigation in seven states in which Patenaude operates an office. *See* http://www.pandf.us/.

7. Patenaude is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. Patenaude is a debt collector as defined in 15 U.S.C. § 1692a.

**FACTS**

8. On or about October 18, 2016, Patenaude mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "TD Bank USA, N.A., as successor in interest to Target National Bank" ("TD Bank"). A copy of this letter is attached to this Complaint as Exhibit A.

9. The alleged debt referenced in Exhibit A was a credit card account, and the alleged debt was incurred for personal, family or household purposes, including purchases of household goods at Target Stores. *See* http://www.target.com/c/redcard/-/N-4tfyn.

10. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

11. Exhibit A was the first letter Patenaude sent to Plaintiff regarding this alleged debt.

12. Patenaude's letter as a whole is confusing and misleading to the unsophisticated consumer.

*The Letter Overshadows the Validation Notice*

13. Exhibit A includes the FDCPA debt validation notice. 15 U.S.C. § 1692g(a).

14. Exhibit A also contains the following text:

If you wish to avoid further collection activity, please contact us at (866) 606-3290.

2

15. The text in Patenaude's letter to Plaintiff is inconsistent with 15 U.S.C. § 1692g(a)(4), which states:

> (a) **Notice of debt; contents**
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (4) a statement that if the consumer notifies the debt collector *in writing* within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

(emphasis added).

16. The language reproduced in paragraph 14, above, overshadows the FDCPA debt validation notice.

17. <u>Exhibit A</u> fails to clearly and unambiguously inform the unsophisticated consumer that, in order to invoke his or her right to require Patenaude to cease most collection activities until they provide verification of the debt, the consumer must make the request "in writing." 15 U.S.C. § 1692g(a)(4). Instead, it tells the consumer to contact Patenaude by telephone and provides a toll-free number.

18. The practical effect of the request to call Patenaude is to discourage consumers from disputing debts in writing.

19. An oral dispute does not trigger the FDCPA verification requirements, which includes a temporary suspension of collection efforts until verification is provided. 15 U.S.C. § 1692g(b).

20. Patenaude did not effectively convey to the consumers their rights under the FDCPA. *McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743 (N.D. Ill. 2003); *see also*

3

*Desantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001) (a "debt collector violates the Act if it fails to convey the information required by the Act.").

21. The consumer is not required to rely upon the debt collector to voluntarily comply with the FDCPA. *McCabe*, 272 F. Supp. 2d at 738 ("However, Crawford misses the point of the protection found in § 1692g(a)(4). Although a debt collector *may* provide verification upon *oral* notification, the debt collector *must* provide verification upon *written* notification. If the debtor gives only *oral* notification of the dispute, the FDCPA imposes no requirement on the debt collector to obtain verification of the debt.").

22. Failure to provide the correct validation notice within five days of the initial communication with Plaintiff and the class is a *per se* violation of the FDCPA. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 324 (7th Cir. 2016) ("we have not extended the implicit materiality requirement of § 1692e to reach claims under § 1692g(a).").

23. For purposes of Plaintiff's claim under 15 U.S.C. §§ 1692e and 1692e(10), Defendants' omission is a material violation of the FDCPA. A consumer who attempts to orally exercise verification rights or a request for the identity of the original creditor does not effectively invoke his or her rights under 15 U.S.C. § 1692g(b):

> (b) **Disputed debts**
> If the consumer notifies the debt collector *in writing* within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector *in writing* that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period

4

may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

(emphasis added).

24. Patenaude's statement that the consumer should call Patenaude, rather than communicate a dispute in writing, overshadows the validation notice. 16 U.S.C. § 1692g.

### *The Letter Is Not "From An Attorney"*

25. Exhibit A is printed on Patenaude's attorney letterhead, which identifies the firm as "A Professional Law Corporation."

26. Exhibit A also refers to Patenaude as a "Law Office."

27. The first sentence on Exhibit A also states: "Please be advised that the above-referenced debt has been assigned to this firm to initiate collection efforts regarding your delinquent outstanding balance to our client."

28. Exhibit A falsely implies that an attorney was meaningfully involved in the collection of the accounts in October 2016.

29. The unsophisticated consumer, receiving a letter from a law firm, believes that that law firm has been hired to sue the consumer, and that an attorney is personally and professionally involved in the consumer's file.

30. The Seventh Circuit has stated: "An unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up. And that clearly is the reason why the dunning campaign escalates from the collection agency, which might not strike fear in the heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking." *Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir.1996).

31. "If a debt collector (attorney or otherwise) wants to take advantage of the special connotation of the word 'attorney' in the minds of delinquent consumer debtors to better effect collection of the debt, the debt collector should at least ensure that an attorney has become professionally involved in the debtor's file." *Id.*; *see also Nielsen v. Dickerson*, 307 F.3d 623, 635 (7th Cir. 2002); *Clomon v. Jackson,* 988 F.2d 1314, 1320-21 (2d Cir. 1993).

32. The Third Circuit has held that collection letters, from debt collection law firms, purporting to be "from an attorney" when there was no actual attorney involvement violated the FDCPA, even though the letters included an attempted disclaimer of attorney involvement. *Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 995 (3d Cir. 2011).

33. Other Circuits have held that "a lawyer acting as a debt collector must notify the consumer, through a clear and prominent disclaimer in the letter, that the lawyer is wearing a 'debt collector' hat and not a 'lawyer' hat when sending out the letter."

34. Exhibit A does not include any language in the nature of a disclaimer of attorney involvement, let alone a "clear and prominent disclaimer" like the one discussed in *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 361-62 (2d Cir. 2005).

35. Upon information and belief, at the time Exhibit A was mailed to Plaintiff and the class, no attorney had assessed the validity of the alleged debts to the standards required of an attorney.

36. Patenaude is a high-volume debt collector.

37. Upon information and belief, from the time that consumer debts are placed with Patenaude for collection until the time that a legal complaint is drafted, the only employees of Patenaude who are directly involved in the collection process of consumer debts are non-attorneys.

38. Moreover, Patenaude is frequently engaged to send collection letters to consumers with no intent that Patenaude will ever file a lawsuit to collect the debt.

39. Upon information and belief, none of Patenaude's attorneys are licensed to practice in Wisconsin. An advanced search on the State Bar's website using the keyword "Patenaude" returns the message: "Your search did not match any members."

40. Upon information and belief, a significant portion of Patenaude's debt collection activities during that time period consists of computer-automated processes, including the sending of computer-generated form letters like Exhibit A.

41. Upon information and belief, at the time Exhibit A were mailed to Plaintiff and the class, no attorney at Patenaude had reviewed any documentation underlying the alleged debts, including but not limited to any contract, payment history or any other documents establishing or evidencing the alleged debts.

42. Upon information and belief, at the time Exhibit A was mailed to Plaintiff, no attorney at Patenaude had reviewed anything relating to Plaintiff's account. Instead, a computer or a non-attorney assistant at Patenaude or a third party mailing company generated and mailed Exhibit A as part of a batch of identical, except for personal information, form debt collection letters.

43. Upon information and belief, at the time Exhibit A were mailed to Plaintiff and the class, no attorney at Patenaude had exercised the professional judgment of an attorney that Plaintiff or any other class member was delinquent on his or her debt and a candidate for legal action, nor was any attorney at Patenaude meaningfully involved in the decision to send Exhibit A to Plaintiff and the class.

44. Upon information and belief, no attorney at Patenaude personally reviews each class member's collection letter in any meaningful sense, before the letter is mailed.

45. Upon information and belief, no attorney at Patenaude makes an individualized assessment of the class member's circumstances or liability, before Exhibit A is mailed to each class member.

### *The Letter Is Confusing As To the Amount Patenaude Is Collecting*

46. Exhibit A also states:

Total Due: $1193.98
Minimum Due: $69.00

47. Exhibit A is confusing to the unsophisticated consumer. It is unclear whether Patenaude is collecting the entire $1,193.98 balance or just the $69.00 that was represented to be the "Minimum Due."

48. The alleged debt or debts here is an unsecured credit card account. Upon information and belief, Patenaude and TD Bank would accept any payment of any amount at any time.

49. It is not unusual for banks to hire a debt collector to collect only the "past due" amount, i.e. missed payments and fees, of a credit card balance rather than the whole balance. The Seventh Circuit held in *Barnes v. Advanced Call Ctr. Techs., LLC*, 493 F.3d 838, 840 (7th Cir. 2007), that "only the past due amount, the amount owed [to the debt collector], can be the 'amount of the debt' under § 809(a)(1)." Whichever number Patenaude is truly collecting, it need only state that amount in the letter.

50. The different amounts on Exhibit A render Exhibit A confusing to the unsophisticated consumer, who would not be able to determine, or would be confused as to, which amount Patenaude was actually attempting to collect.

8

## *The FDCPA*

51. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

52. 15 U.S.C. § 1692e(3) specifically prohibits: "The false representation or implication that any individual is an attorney or that any communication is from an attorney."

53. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

54. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

55. 15 U.S.C. §1692g(a) requires:

> (a) Notice of debt; contents Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

56. 15 U.S.C. § 1692g(b) states, in part:

> (b) **Disputed debts**

> …
> Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

57. Plaintiff was confused by Exhibit A.

58. Plaintiff had to spend time and money investigating Exhibit A, and the consequences of any potential responses to Exhibit A.

59. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit A.

60. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

61. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses"). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

### COUNT I – FDCPA

62. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

63. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

64. Exhibit A fails to clearly inform the consumer that, in order to invoke his or her right to obtain verification of the debt, the consumer must make the request in writing. 15 U.S.C. § 1692g(a)(4).

65. The statement in Exhibit A: "If you wish to avoid further collection activity, please contact us at (866) 606-3290," overshadows the FDCPA debt validation notice.

66. Defendant violated 15 U.S.C. §§ 1692g, 1692g(a), 1692g(b), 1692e and 1692e(10).

### COUNT II -- FDCPA

67. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

11

68. <u>Exhibit A</u> creates the false impression that an attorney at Patenaude had personally reviewed the circumstances of Plaintiff's and class members' alleged debts and <u>Exhibit A</u> itself, and "reached a considered, professional judgment that the debtor is delinquent and is a candidate for legal action," at the time that the letters were mailed to Plaintiff and class members.

69. Before mailing <u>Exhibit A</u> to Plaintiff and the class, no attorney at Patenaude had any meaningful involvement with Plaintiff's or class members' alleged debts or the letters. *Avila*, 84 F.3d at 229; *Nielsen*, 307 F.3d at 635.

70. Such conduct violates 15 U.S.C. §§ 1692e, 1692e(3), 1692e(10), and 15 U.S.C. § 1692f.

## COUNT III -- FDCPA

71. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

72. Patenaude represented the amount of the debt that Patenaude was attempting to collect in a confusing manner by stating multiple amounts that Patenaude was attempting to collect. <u>Exhibit A</u>.

73. The unsophisticated consumer would be confused as to whether Patenaude was attempting to collect only the "Minimum Due" or the total balance.

74. Patenaude's conduct violates 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692(f) and 1692g(a)(1).

## CLASS ALLEGATIONS

75. Plaintiff brings this action on behalf of a Class consisting of (a) all natural persons in the State of Wisconsin, (b) who were sent an initial collection letter in the form represented by <u>Exhibit A</u> to the complaint in this action, (c) seeking to collect a debt, incurred for personal,

family or household purposes (d) between January 25, 2016 and January 25, 2017, inclusive, (e) that was not returned by the postal service.

76. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

77. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibit A violates the FDCPA.

78. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

79. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

80. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

81. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: January 25, 2017

**ADEMI & O'REILLY, LLP**

By: <u>/s/ John D. Blythin</u>
Shpetim Ademi (SBN 1026973)
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Denise L. Morris (SBN 1097911)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
sademi@ademilaw.com
jblythin@ademilaw.com
meldridge@ademilaw.com
dmorris@ademilaw.com

14